Court Of Appeals
Fourth Court of Appeals District of Texas
San Antonio

★ ★ ★ ★ ★ ★ ★

# MEMORANDUM OPINION

No. 04-08-00840-CR

David Aguirre **LOPEZ**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 365th Judicial District Court, Zavala County, Texas
Trial Court No. 07-11-03087-ZCRAJA
Honorable Mark R. Luitjen, Judge Presiding

Opinion by:   Karen Angelini, Justice

Sitting:   Karen Angelini, Justice
Sandee Bryan Marion, Justice
Phylis J. Speedlin, Justice

Delivered and Filed:   June 17, 2009

AFFIRMED

David Aguirre Lopez was charged with the felony offense of assault on a public servant.

Following a jury trial, he was found guilty and sentenced to two years confinement. His sentence was

then suspended, and he was placed on community supervision for six years. In two issues on appeal,

he contends the evidence is legally and factually insufficient to support his conviction. Finding the

evidence both legally and factually sufficient, we affirm the trial court's judgment.

**DISCUSSION**

*1.      Standard of Review*

In a legal sufficiency review, we view the evidence in the light most favorable to the verdict and then determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Prible v. State*, 175 S.W.3d 724, 729-30 (Tex. Crim. App. 2005). In a factual sufficiency review, we view all the evidence in a neutral light and will set the verdict aside only if the evidence is so weak that the verdict is clearly wrong and manifestly unjust, or the contrary evidence is so strong that the standard of proof beyond a reasonable doubt could not have been met. *Id.* at 730-31.

*2.      Assault on a Public Servant*

A person commits assault, which is classified as a Class A misdemeanor, if the person intentionally, knowingly, or recklessly causes bodily injury to another. TEX. PENAL CODE ANN. § 22.01(a)(1), (b) (Vernon 2003). However, the offense is a third degree felony if the assault is committed against "a person the actor knows is a public servant while the public servant is lawfully discharging an official duty, or in retaliation or on account of an exercise of official power or performance of an official duty as a public servant." *Id.* § 22.01(b)(1).

In the indictment against Lopez, the State alleged that Lopez "intentionally and knowingly cause[d] bodily injury to RAUL GOMEZ, by grabbing the said RAUL GOMEZ and by forcing the said RAUL GOMEZ to the floor, and . . . LOPEZ then and there knew that RAUL GOMEZ was a public servant to-wit: County Commissioner for Precinct 2 in Zavala County, while RAUL GOMEZ was lawfully discharging an official duty, and in retaliation and on account of an exercise of official power and performance of an official duty as a public servant by RAUL GOMEZ."

On appeal, Lopez does not dispute the jury's finding that he assaulted Gomez. Rather, his sole contention is that the evidence is legally and factually insufficient to establish that, at the time of the assault, Gomez was lawfully discharging an official duty or that the assault was in retaliation and on account of an exercise of official power and performance of an official duty as a public servant.

*3.*     *The Evidence*

The parties agree that when the assault occurred on February 7, 2007, both Lopez and Gomez served as commissioners for Zavala County, Texas. They also agree that Lopez and Gomez were involved in a disagreement over whether Gomez would be able to use a certain office located within a county warehouse. Further, it is undisputed that, as Gomez was talking on the phone in his office, Lopez walked in and an altercation ensued during which Gomez ended up on the floor.

At trial, County Judge Joe Luna testified that at a January 28, 2007, Commissioners' Court meeting, the commissioners discussed an agenda item concerning the use of an office at a county warehouse, including adding a door to the office. According to Luna, Gomez wanted to use the office, which was located next door to Lopez's office. When the item concerning the use of the office passed in favor of Gomez, Lopez was upset because he did not want Gomez to use that office. Then, on February 7, 2007, Gomez called Luna and told Luna that Lopez had assaulted him. Gomez told Luna that Lopez had assaulted him because Lopez and his friends did not want Gomez to move into the office. Luna told Gomez to come to his office and, when Gomez arrived, Luna called the sheriff and the district attorney to report the incident. According to Luna, the assault occurred during working hours in a warehouse owned by the county, and Gomez was conducting county business at the time in what was supposed to be his office.

Roberto Fiscal, who worked for the county under Lopez's supervision, testified that on the day of the incident he was at the warehouse and, at Lopez's request, was helping to circulate a petition asking the commissioners to rescind their decision allowing Gomez to office at the warehouse. The room where Gomez was going to office had been used for a number of purposes, including as a conference room, lunchroom, and storm shelter. According to Fiscal, Gomez arrived and asked him about the petition. Gomez then went into his office. When Lopez arrived, Gomez was sitting down in his office and talking on a cell phone. Fiscal told Lopez that Gomez wanted to talk to Lopez about the petition that was circulating. Fiscal and Lopez then went into Gomez's office, but Lopez told Fiscal to leave and close the door.

Also at trial, Frankie Cisneros, a county employee who worked under Gomez's supervision, testified that he spoke with Gomez on the afternoon of the altercation. Gomez told him Lopez had assaulted him at the Zavala County warehouse where Gomez was working as a commissioner.

Mark Castillo, who served on the City Economic Development Corporation ("EDC") with Gomez, testified that he was speaking with Gomez on the phone when the altercation occurred. Gomez had called Castillo to ask for a phone number pertaining to EDC business. The conversation ended abruptly when Castillo heard a lot of noise, and then the phone dropped and went dead. Before the phone went dead, Castillo heard Gomez and Lopez talking. According to Castillo, Lopez said something about what had happened at the commissioners' meeting.

Pedro Morales testified at trial that on the date of the incident he was working as a volunteer at the county warehouse. When Lopez walked into Gomez's office, Morales saw that Gomez was on the phone. Morales saw Gomez turn toward Lopez and then saw Lopez knock Gomez to the

ground. Morales testified that at the time of the altercation Gomez was in the office and acting as a commissioner.

Gomez testified that when he became a commissioner, he decided that it would be more feasible and convenient for his office to be next to Lopez's office in the county warehouse. According to Gomez, Lopez at first agreed that he could move into the adjacent office, but then changed his mind and told Gomez to leave. The matter went before the commissioners at the January 2007 meeting, and the motion passed, allowing Gomez to move into the office. On February 7, 2007, Gomez heard that a petition was being circulated in an attempt to persuade the commissioners to reconsider their decision. Gomez then went to the warehouse where he talked to some female workers and Fiscal about the petition. According to Gomez, Fiscal said the female workers had asked him to circulate the petition, but when Gomez questioned the women, they told Gomez he would have to talk to Lopez to get information about the petition. Gomez then went into his office to place a call to Mr. Botello of the community council to report that Botello's workers were circulating a petition. When Gomez could not find a phone book, he called Castillo to ask if he knew Botello's number. Gomez testified that at the time of the incident he was working as a county commissioner and was not working on personal business. According to Gomez, Lopez then walked into his office and assaulted him by knocking him to the floor. Gomez asked Lopez why he had pushed him down, to which Lopez replied, "Well, I heard you were talking about me." During the altercation, there was nothing mentioned about the use of the office or Gomez's functions as a commissioner. Gomez testified that Lopez knew he was a public servant at the time of the assault. Gomez also testified that when the attack happened, Gomez was conducting official business for the County of Zavala. Also,

when Gomez sought medical treatment, he told the hospital workers he was assaulted for doing his duties.

Lopez testified on his own behalf about the incident between Gomez and himself. According to Lopez, when Gomez became a commissioner, Lopez discussed with Gomez the use of the warehouse room Gomez wanted to use as an office. This room had been used as a conference room and a lunchroom. Because Lopez objected to Gomez using the room as his office, Gomez brought the issue before the commissioners. The commissioners voted in favor of Gomez using the room as his office. According to Lopez, the warehouse volunteers then approached him, asking him to bring the issue back before the commissioners because they wanted to use the room as a conference room. Fiscal was put in charge of circulating a petition. When Lopez arrived at the warehouse on February 7, 2007, Fiscal approached him and said that Gomez was being rude and wanted to take the petition away. Lopez then approached Gomez and told him they were going to bring the issue back before the commissioners because the volunteers needed the room for a conference room. According to Lopez, because Gomez turned with his elbow toward Lopez, Lopez knocked Gomez down to neutralize him. As Lopez was holding Gomez down, Lopez told Gomez, "We're going to fight you on this. We're going to take it before Commissioners' Court because the volunteers need this as a conference room." Despite testifying that he made this statement to Gomez about the office/conference room, Lopez testified that no county business was discussed during the struggle, and the incident had nothing to do with county business. Lopez also testified that Gomez was not acting as a commissioner at the time of the altercation. According to Lopez, when he told Gomez they were going to appeal the commissioners' decision, Gomez tried to hit him.

*3.* *Discussion*

Lopez argues on appeal that the evidence is legally and factually insufficient because there were not sufficient facts proven to show that Gomez was discharging an official duty at the time he was assaulted. Specifically, Lopez contends that because Gomez was talking on the phone with Castillo discussing EDC business (which is a city, rather than a county, entity), Gomez was not engaging in Zavala County business. Further, Lopez argues that there was insufficient evidence that the assault occurred in retaliation or on account of an exercise of official power or performance of an official duty as a public servant because the only reason Lopez gave Gomez for assaulting him was that Gomez had been "badmouthing" Lopez. In making these arguments, Lopez ignores much of the evidence presented at trial.

The evidence shows that at the time of the assault Gomez was speaking on the phone with Castillo, a city official. Gomez testified that he called Castillo to obtain a phone number for Botello so he could report to Botello that his workers were circulating a petition in an attempt to prevent Gomez from using the office that had been voted on by the commissioners and assigned to Gomez as his office for conducting county business. Further, in addition to the evidence concerning the ongoing dispute between Gomez and Lopez, Luna testified that Gomez was conducting county business at the time of the assault; Cisneros testified that Gomez was assaulted at the warehouse where Gomez was working as a commissioner; and Morales testified that Gomez was in the office as a commissioner at the time of the assault. Thus, reviewing the evidence in the light most favorable to the verdict, we hold that the evidence is legally sufficient to support the jury's verdict.

With regard to factual sufficiency, we note that while Castillo testified that Gomez had called him to obtain a phone number having to do with EDC business, Gomez testified he had called Castillo to obtain Botello's phone number so that he could tell Botello his workers were circulating the petition. And, while it is true that the evidence shows the reason Lopez gave Gomez for assaulting him was that Gomez had been "badmouthing" Lopez, the evidence also shows the assault occurred against a backdrop of an ongoing dispute between Lopez and Gomez concerning the use of the warehouse space. Lopez wanted to preserve it as a conference room for use by volunteers, and Gomez wanted to use it for his county office. Gomez went to the warehouse on the day of the incident because he had heard a petition was circulating that requested the commissioners to re-visit the warehouse office issue. When Gomez was assaulted by Lopez, Gomez was in his office on the telephone trying to obtain a phone number so he could report to Botello the fact that his workers were circulating a petition. Even Lopez testified that during the altercation he told Gomez they were going to appeal the commissioner's decision to allow Gomez to use the room as an office because the warehouse volunteers needed it to use as a conference room. Therefore, viewing all the evidence noted above in a neutral light, we find the evidence to be factually sufficient to support the jury's verdict.

Accordingly, we affirm the trial court's judgment.

Karen Angelini, Justice

Do not publish